## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | No. 2:14-cr-00412-DCN |
| LEVELLE GRANT, ) | |
| ) | **ORDER** |
| Defendant. ) | |
| _____ ) | |

      This matter is before the court on defendant Levelle Grant's ("Grant") motion for compassionate release, ECF No. 125. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

      On June 11, 2014, a grand jury charged Grant with three counts of being a felon in possession of a firearm. As the bases for two of those counts, Grant was twice arrested by officers in the Colleton County Sheriff's Office when the officers attempted to stop Grant for speeding and Grant fled from the officers at a high speed. Both times, officers found a firearm in Grant's car after apprehending him. Grant was classified as an armed career criminal under the Armed Career Criminal Act ("ACCA") because he had three prior convictions for burglary in South Carolina. Under the ACCA, Grant faced a mandatory minimum sentence of fifteen years. Based on Grant's additional criminal history, he faced an even higher sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines").

      Because Grant was less than eighteen years old when he committed the three burglaries and because the government "concluded that the mandatory minimum under 18 U.S.C. § 924(e) was (somewhat) greater than necessary to comply with the purposes

1

set forth in 18 U.S.C. § 3553," ECF No. 118-1 at 3, the government filed an information for two counts of Possession of a Firearm in a School Zone to avoid the ACCA mandatory minimum sentence, ECF No. 71.  Pursuant to a plea agreement, Grant pleaded guilty to the information.  ECF No. 75.  However, because Grant fled officers twice, the pre-sentence report ("PSR") recommended applying a two-level adjustment to Grant's offense level for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2, which the court adopted.  ECF No. 112-1 at 21.  The government then filed a motion for an upward departure and upward variance based on various factors, including the seriousness of Grant's underlying conduct, the need to protect the public from further crimes, and the need to promote respect for the law.  ECF No. 88.  On November 23, 2015, the court applied both an upward variance and upward departure and sentenced Grant to 120 months of imprisonment and two years of supervised release.  The Fourth Circuit affirmed Grant's sentence.  United States v. Grant, 665 F. App'x 304 (4th Cir. 2016).  Grant filed a petition for writ of certiorari, which was denied on May 1, 2017.  Grant v. United States, 137 S. Ct. 2104 (2017).

On February 4, 2021, Grant, proceeding pro se, filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 125.  On February 17, 2021, the United States of America (the "government") responded in opposition.  ECF No. 128.  On March 18, 2021, Grant, through court-appointed counsel, supplemented his motion.  ECF No. 133.  On June 29, 2021, Grant, again through court-appointed counsel, filed a second supplement to his motion.  ECF No. 134.  The motion is ripe for review.

## II.  STANDARD

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 458 F. Supp. 3d. 383, 385 (E.D.N.C. 2020). Prior to the First Step Act, the law permitted only the Bureau of Prisons (the "BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended § 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate release with the sentencing court after exhausting all available administrative remedies. United States v. Griggs, 462 F. Supp. 3d 610, 615 (D.S.C. 2020).

The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Fourth Circuit clarified that district courts are empowered to "consider any extraordinary and compelling reason for release that defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original) (quoting United States v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)). If the court finds that such circumstances warrant compassionate release, it must consider the factors set forth in § 3553(a) to determine whether a reduction in sentence would be further justified. 18 U.S.C. § 3582(c)(1)(A). A defendant seeking compassionate release "has the burden of establishing that such relief is warranted." Griggs, 462 F. Supp. 3d at 615. Even after the changes to § 3582(c)(1)(A)(i)

promulgated under the First Step Act, the burden remains "exceptionally high." McCoy, 981 F.3d at 288.

### III.   DISCUSSION

Grant moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or, in the alternative, for a court order allowing Grant to complete his sentence in a halfway house or residential reentry center for the maximum time permitted.  The court first considers whether Grant has exhausted all his administrative remedies as required under § 3582(c)(1)(A).  Finding that Grant has done so, the court then addresses Grant's argument that extraordinary and compelling circumstances warrant a reduction in his sentence.  Finally, the court addresses Grant's request that he be allowed to complete the remainder of his sentence with an alternative placement.

#### A.  Administrative Exhaustion

As a prerequisite to a motion for compassionate relief, a defendant must exhaust his available administrative remedies.  Section 3582(c)(1)(A)(i) provides that a defendant does so when: (1) the "defendant has fully exhausted his administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) the defendant requested compassionate relief from the warden of his facility and thirty days from the warden's receipt of the request has lapsed without response, "whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).

On December 10, 2020, Grant sent an email entitled "Request to Staff" to the warden of Federal Correctional Institution Butner Medium I ("FCI Butner I"), where Grant is incarcerated.  In the email, Grant wrote that he was making "a formal request for compassionate release/sentencing reduction to appease the First Step Act exhaustion

requirements so the defendant may move his petition to the district court." ECF No. 132 at 2. Then, on January 4, 2021, Grant submitted a formal Request to Staff. ECF No. 128-1. In the Request to Staff, Grant wrote that he was asking to be considered for a reduction in sentence and underlined "Debilitated Medical Condition" as the reason. Id. On January 7, 2021, the warden wrote a letter to Grant denying his request based on the debilitated medical condition criteria. ECF No. 128-2.

The government asserts that Grant's administrative request "did not address the defendant's concerns regarding the threat the COVID-19 pandemic poses to this [sic] son's health," which is the basis for compassionate release Grant raises in the instant motion. ECF No. 128 at 4–5. The government contends that Grant has not exhausted his administrative remedies because the court cannot consider a motion for compassionate release that is based on evidence or arguments that were not first presented to the BOP. In reply, Grant argues that the form letter for the Request for Staff only contained three categories for describing the reason for the reduction in sentence request, and he did not believe that any of the three options directly applied to his circumstances. As such, Grant underlined "Debilitated Medical Condition," as he believed that category most closely described the circumstances surrounding his son's need for childcare.

Critically, in his reply, Grant also attaches the December 10 email he wrote to the warden. The email explained that Grant had a viable release plan, which would involve "providing childcare for my 8 year old son during the week. My sin [sic] has severe asthma and will be taking his classes virtually online for his health and safety." ECF No. 132 at 3. Grant further explained that his son's mother was unable to miss time from work to provide childcare. Id.

5

The court finds that Grant's administrative request, when considered in tandem with his email, sufficiently exhausted his administrative remedies. The government does not challenge the authenticity of the email or otherwise call it into question. The substance of Grant's email reasonably put the warden on notice that Grant would be seeking compassionate release based on the alleged need to take care of his son during the pandemic. Even assuming that the warden's response only pertained to the Request for Staff dated January 4, 2021, more than thirty days elapsed following Grant's December 10, 2020 email before Grant filed his motion for compassionate release. Based on the request contained in the email, the court finds that the exhaustion requirement has been satisfied. As such, the court proceeds to analyze the merits of Grant's motion.

### B. Extraordinary and Compelling Circumstances

As referenced above, Grant originally moved for compassionate release on the grounds that his son's mother, Tejhal Milligan ("Milligan"), was unable to miss time from work, and she needed Grant to provide childcare for their son while the son received remote instruction during the COVID-19 pandemic. Grant reaffirmed this position in his first supplement to his motion for compassionate release, noting that even though his son had returned to in-person school at that point, Milligan was still unable to provide care during non-school hours and often had to bring their son into work without permission. Grant further wrote that Milligan had agreed to provide Grant with a bedroom and would have required Grant to hold a part time job, contribute financially, and care for their son. ECF No. 133 at 6. But in his second supplement to his motion for compassionate release, Grant, via court-appointed counsel, informed the court that since the time of the first

6

supplement, Milligan was "no longer able to offer her home as a place of residence." ECF No. 134 at 1.

The court finds that Grant's childcare responsibility is not an extraordinary and compelling reason for his early release. Courts have found that a defendant's need to care for others in situations where a primary caregiver is not incapacitated does not typically qualify as extraordinary or compelling. See, e.g., United States v. Guest, 2022 WL 2104492, at *13 (D. Md. June 9, 2022) (finding that "the fact that [the defendant's girlfriend] is employed full-time does not render her incapacitated" and as such, the defendant's "family circumstances do not amount to extraordinary and compelling circumstances"); United States v. Broome, 2022 WL 893110, at *4 (W.D.N.C. Mar. 25, 2022) (noting that the defendant did not present extraordinary circumstances where he failed to assert that his wife had "become incapacitated such that she is unable to care for the children"); accord United States v. Farlow, 2021 WL 1207485, at *3 (D.N.J. Mar. 30, 2021) (denying motion that requested compassionate release on the ground that the mother of the defendant's child was an essential worker and encountered difficulty caring for the child during the pandemic); United States v. Dogan, 2020 WL 4208532, at *3 (E.D. Cal. Jul. 22, 2020) ("The Court recognizes that caring for children fulltime, in the midst of a public health crisis, is increasingly challenging. But it is neither unusual nor insurmountable.").

Moreover, even if the court were to find that Grant's original argument could have served as the basis for compassionate release, his change in circumstance would alter that calculation. Grant writes that Milligan is no longer able to offer him a place in her home because Milligan's sister and three children now live with her. It appears, then,

that Milligan was able to find alternative arrangements for the care of her and Grant's child. It is unclear what role, if any, Grant would have if he were to be released but not live with Milligan and his child. In any event, the court reiterates that "the struggle to find suitable childcare is one faced by people in every walk of life" and does not rise to the level of being extraordinary or compelling. Guest, 2022 WL 2104492, at *13.

Finally, Grant notes in his first supplement that he has been rehabilitated, further justifying compassionate release. Specifically, Grant states that he has only had one disciplinary infraction while he has been in custody, he has completed his GED, and he has completed all the drug education courses available to him. ECF No. 133 at 5. Certainly, rehabilitation is a factor that the court may consider under 18 U.S.C. § 3553(a) should the court find that there is an extraordinary and compelling reason warranting further consideration of a reduction in sentence. However, the court determined above that his family circumstances provide no such reason, and "the law enacted by Congress unequivocally precludes this Court from concluding that [Grant's] rehabilitation, in isolation, is an extraordinary and compelling reason." United States v. Harris, 2022 WL 2916376, at *2 (D. Md. July 25, 2022), appeal filed on other grounds. As such, the court finds that there are no independent factors constituting extraordinary and compelling reasons for compassionate release, and the court denies the motion.

### C. Recommendation for Alternative Placement

In his first supplement to his motion for compassionate release, Grant alternatively requests that the court issue a recommendation for his release to home confinement under 18 U.S.C. § 3624. In his second supplement, Grant states that he is now homeless. As stated before, it is no longer possible for Grant to live with Milligan.

Furthermore, Grant advises the court that he cannot live with his mother because she is in public housing, and a convicted felon is not permitted to live there. ECF No. 134 at 1. Accordingly, Grant's second supplement "requests that this Court recommend that he live in the halfway house or Residential Reentry Center for the maximum time permitted." Id.

Section 3624(c)(2) of Title 18 authorizes the BOP "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Recognizing the risk that the COVID-19 pandemic imposes upon the incarcerated, Congress amended 18 U.S.C. § 3624(c)(2) as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). That amendment provides the Attorney General the power to "lengthen the maximum amount of time for which the Director [of BOP] is authorized to place a prisoner in home confinement." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 236 (Mar. 27, 2020).

Even after the amendments promulgated under the CARES Act, the BOP retains the exclusive discretionary authority to release a defendant to home confinement or to transfer him or her to a residential reentry center. See 18 U.S.C. §§ 3621(b), 3624(c)(2); see also Tapia v. United States, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over the place of the prisoner's imprisonment . . . ."). In determining a prisoner's prerelease placement, 18 U.S.C. § 3621(b) instructs the BOP to consider the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, any statement made by the court that imposed the sentence, and any

pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) of Title 28.

The BOP is in a far better position than the court to evaluate an inmate's placement alternatives. See United States v. Smith, 2019 WL 4037477, at *3 (D.S.C. Sept. 3, 2021); see also United States v. Smith, 2019 WL 4016211, at *3 (W.D. Va. Aug. 26, 2019) ("[T]he court finds in this case that the BOP is in a superior position to evaluate Defendant's assertions and to determine the extent, if any, to which she should serve all or part of the end of her sentence in an RRC, or on home confinement."). Unlike the BOP, the court has limited insight into Grant's circumstances of incarceration, what type of placement alternative would benefit him the most, and where Grant should be placed—if indeed that is the proper determination.

Certainly, courts have found authority in § 3621(b) to make recommendations to the BOP regarding prerelease placement. See United States v. Martin, 877 F.3d 1035, 1036 (11th Cir. 2017) (collecting cases); United States v. Perkins, 2020 WL 4783558, at *8–9 (D.N.H. Aug. 18, 2020) (collecting cases). However, where the BOP has weighed or will weigh in, the need for the district court to provide a recommendation is minimal. Cf. Perry v. Krueger, 2015 WL 6500915, at *3 (C.D. Ill. Oct. 27, 2015) (noting that it is not the role of the court to conduct an independent review of the BOP's decisions regarding a prisoner's placement in a half-way house). Here, Grant states that he applied for a residential drug abuse program at FCI Butner I but has been advised that he is unlikely to get in. ECF No. 133 at 5. Presumably, the BOP would have moved Grant to an alternative placement if it found he qualified. The court is confident that the BOP has and/or will continue to deliberately weigh all the relevant considerations, including the

§ 3621(b) factors discussed above. The court finds that there are no additional considerations that justify the court recommending to the BOP that it decide the issue of prerelease placement in Grant's favor.

### IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 5, 2022**
**Charleston, South Carolina**

11